Melvin A. POPE, Plaintiff-Respondent,

v.

Dwight E. ZIEGLER, Defendant-Appellant.

Court of Appeals

*Nos. 84–658, 84–1599. Submitted on briefs October 11, 1985.—*
*Decided October 17, 1985.*
(Also reported in 377 N.W.2d 201.)

For the defendant-appellant the cause was submitted on the briefs of *Linda S. Balisle* and *Koritzinsky, Neider, Langer & Roberson* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Claude J. Covelli* and *Boardman, Suhr, Curry & Field* of Madison.

Before Gartzke, P.J., Dykman, J., and Eich, J.

EICH, J. Dwight Ziegler appeals from summary judgments entered against him in two cases. Both judgments enforce the terms of a contract between appellant and the respondent, Melvin Pope, and in both cases the trial court rejected appellant's defense of economic duress.[1] The issue is whether the uncontroverted facts establish a prima facie defense. Because we conclude they do not, we affirm.

In reviewing summary judgments, we apply the same analysis as the trial court. We first examine the pleadings. If the complaint states a claim for relief and the answer joins the issues, we then look to the moving party's affidavits to determine whether they establish a prima facie case for summary judgment. If they do, we consider the opposing affidavits to determine whether any material facts are in dispute which would entitle the opposing

---

[1] In the first case, commenced in 1983, respondent sought to collect overdue contract installments from appellant. Judge Frankel ruled that appellant failed to establish a prima facie defense. Later in 1983, while the first case was on appeal, respondent sued again seeking similar relief. Judge Bardwell granted summary judgment for respondent on grounds that the judgment in the earlier case was *res judicata*. An appeal was taken, and we ordered the two cases consolidated for purposes of appeal.

party to a trial. *In re Cherokee Park Plat,* 113 Wis.2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). If there is no genuine issue of fact, we proceed to decide whether the moving party is entitled to summary judgment as a matter of law. Sec. 802.08(2), Stats.

The complaint states a claim against appellant for installment payments due on the contract, and appellant's answer joins the issues. Respondent's affidavits present a prima facie case for summary judgment, and because the opposing affidavits disclose no dispute of material fact, we consider the legal issues.

Appellant and respondent were partners in various shopping center developments. In one of them, "The Renaissance Group," appellant was a ninety percent partner and respondent a ten percent partner. In 1983, the Renaissance Group was in desperate need of cash and appellant borrowed money for Renaissance from the parties' other partnerships. The parties concede that such interpartnership borrowing could expose appellant to liability under state partnership laws. By March, 1983, appellant and the Renaissance Group were "at the end of [their] financial rope." At that time, appellant's primary asset was his ownership interest in a shopping center development, the Northland Mall. Because he was in default on the purchase agreement, however, his interest was about to revert to the original sellers. Substantial payments were required to resurrect the agreement, and if he could not make the payments he would be forced into bankruptcy. In addition, the Renaissance Group had committed $256,000 to development of the mall which would be lost if the purchase agreement could not be saved.

Appellant contacted the Madsen Corporation for assistance, and it was agreed that Madsen would undertake development of the mall and would provide sufficient funds to enable appellant to resurrect the purchase agreement. However, Madsen's aid was conditioned upon termination of the several partnerships and other business

associations in which appellant and respondent were involved. Upon termination, Madsen agreed to pay $524,787 of appellant's personal debts and $560,827 of the Renaissance Group's debts immediately. In addition, Madsen would pay an additional $473,027 of appellant's personal debts and the remainder of the Renaissance Group's debts (except for an obligation to appellant's wife) over time as funds became available. Finally, Madsen agreed to pay appellant a percentage of any "excess cash" left over upon completion of the mall project.

Appellant then reached agreement with the original sellers to resurrect the purchase agreement upon payment of $90,000 by 3:30 p.m. on April 18, 1983. By April 16, appellant and respondent had reached tentative agreement on all but one of their partnerships, a joint venture which was also involved in the Northland Mall development.

Early discussions for dissolution of the joint venture contemplated that respondent would sell his interest to appellant for $150,000, which was to be paid by Madsen. They met on the morning of April 18th to continue the negotiations. Respondent submitted a proposed contract providing for dissolution of all their various business associations, including the Northland Mall venture. The draft contemplated payments to respondent of $200,000 over time. The contract also required that appellant personally guarantee the payments.

During the negotiations on April 18—the "deadline" day—respondent repeatedly reminded appellant that if he did not agree to terminate the partnerships on respondent's terms, the Madsen deal would be "dead" and appellant would be forced into bankruptcy. Respondent also threatened to "expose" the Renaissance Group's borrowing from the other partnerships. After appellant stated that he could not meet respondent's terms, respondent agreed to make $53,000 contingent upon the ultimate success of the project and forego the personal guarantee on

that amount. Several changes were also made to portions of the agreement relating to their other partnerships, some of them ostensibly favorable to appellant. Appellant then signed the agreement.

■

To establish the defense of economic duress, a defendant must prove, by clear, satisfactory and convincing evidence, that there was a wrongful or unlawful act or threat that deprived him of his unfettered will. *Wurtz v. Fleischman,* 97 Wis.2d 100, 106, 293 N.W.2d 155, 158 (1980). "As a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values or to give up something for nothing. If the payment or exchange is made with the hope of obtaining a gain, there is not duress; it must be made solely for the purpose of protecting the victim's business or property interests." (Citation omitted.) *Id.* at 109–10, 293 N.W.2d at 160. A threat to do what the person making the threat has a legal right to do does not constitute duress; nor does driving a hard bargain or taking advantage of another's financial difficulty. *Id.* at 110, 293 N.W.2d at 160.

Appellant has failed to make a prima facie showing of economic duress. Respondent's threats to expose the Renaissance Group's borrowing practices, knowing that the exposure might force appellant into bankruptcy, are not wrongful or unlawful acts. However hard the bargain posed by respondent's eleventh-hour demands for more money and personal guarantees, they do not amount to duress. The stress of business conditions alone will not constitute duress where the other party was not responsible for such conditions. *Selmer Co. v. Blakeslee-Midwest Co.,* 704 F.2d 924, 928 (7th Cir. 1983).

■

Although respondent previously had proposed other less demanding terms, no agreement had been reached when the parties met on April 18th. The fact that respondent agreed at that meeting to forego part of his demand

for a personal guarantee, and that changes and concessions were made in other parts of the contract during the final negotiations, indicate that bargaining occurred on April 18—that, even though the time constraints were severe, appellant was not deprived of his free will. Finally, we agree with the trial court's conclusion that appellant entered into the agreement with the hope of gain.[2] It is undisputed that if respondent and appellant terminated their partnerships, Madsen would resurrect the Northland Mall purchase agreement and pay off over one million dollars of appellant's personal and partnership debts. And, should the project achieve ultimate success, appellant will receive additional cash payments. Summary judgment was appropriate.[3]

*By the Court.*—Judgments affirmed.

---

[2] Appellant argues for the first time in his reply brief that the facts as to any actual or hoped-for gain are disputed. He claims he "would not have begun to see any cash until over $2 million in debts had been paid." This, however, does not controvert the undisputed fact that Madsen had agreed to pay a significant portion of appellant's substantial individual and partnership debts, in addition to the agreed-upon cash payouts.

[3] We note that in *Wurtz,* 97 Wis.2d at 108, 293 N.W.2d at 159, the supreme court stated that "the question of whether duress existed in a particular transaction is a matter of fact." While, as indicated, appellant argued that at least some of the facts as to whether he stood to gain from the transaction were in dispute, neither party suggests that summary judgment is unavailable *per se* in economic duress cases. Indeed, where justified on the record, it has long been considered an appropriate means of resolving such issues. *Selmer Company, supra; Federal Deposit Ins. Corp. v. Balistreri,* 470 F. Supp. 752 (E.D. Wis. 1979); *T. F. Pagel Lumber Co. v. Webster,* 231 Wis. 222, 285 N.W. 739 (1939).

The court's statement in *Wurtz* was made during the course of its criticism of the court of appeals for what it considered an improper foray into fact-finding. We do not consider it to be a statement of substantive law ruling out summary judgments in all cases where economic duress is at issue.