**S+L+H S.p.A., Viale F. Cassani 15 24047 Treviglio, Italy, a foreign corporation, Plaintiff–Appellee,**

v.

**MILLER–ST. NAZIANZ, INCORPORATED, Defendant–Appellant.**

No. 92–1199.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1992.

Decided March 19, 1993.

Michael Bowen, Michael G. McCarty (argued), Brian P. Akers, Foley & Lardner, Milwaukee, WI, Reese Harrison, Tim Tuggey, Kathryn M. Kase, Oppenheimer, Rosenberg, Kelleher & Wheatley, San Antonio, TX, for S+L+H S.P.A., Viale F. Cassani 15 24047 Treviglio, Italy, a foreign corporation.

Ross A. Anderson (argued), Mary C. Flanner–Strack, Michael J. Klinker, Jeffrey P. Aiken, Frisch Dudek, Ltd., Milwaukee, WI, for Miller–St. Nazianz, Inc.

Before CUDAHY and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

COFFEY, Circuit Judge.

S+L+H S.p.A. ("SLH"), an Italian tractor manufacturer, filed an action in the district court seeking an order compelling Miller–St. Nazianz, Inc. ("Miller"), a Wisconsin corporation which distributes agricultural parts and equipment, to arbitrate Miller's challenge to SLH's termination of their dealership agreement. The district court granted summary judgment in favor of SLH, and ordered Miller to proceed to arbitration. Miller appeals, and we affirm.

I.

SLH is incorporated in Italy and is a subsidiary of SAME, S.p.A., which is also incorporated in Italy. SLH has an American subsidiary, SAME & Lamborghini, Inc. ("S & L"), incorporated in New York.[1] Be-

---

1. When discussing the three companies collectively, we will refer to them as "SAME" or the "SAME group".

ginning in 1976, Miller distributed tractors and parts manufactured by SLH or by its subsidiary, S & L, pursuant to a series of written agreements. Miller acted as a wholesaler for SAME products in the upper Midwest and as a retailer in Wisconsin. From about 1976 to 1986, Miller operated, on a commission basis and on behalf of S & L, the only North American warehouse sales and delivery facility for SAME tractor spare parts. During the 1980s, Miller made several multi-million dollar purchases of SAME tractors to carry as inventory and established two retail dealerships in Wisconsin.

In 1986, the SAME group restructured its North American business activities and Miller acquired several new responsibilities. S & L sold all of its tractor parts inventory to Miller, and Miller sold the spare parts directly to dealers while also handling warranty service and parts. As part of the new arrangement, the SAME group required that Miller hire two servicemen for SAME. Although the SAME group engaged its own sales agent, the agent worked out of and received support services from Miller's offices.

On July 20, 1989, Miller and the SAME group executed three agreements reshaping their business relationship: an agency agreement, which granted Miller an exclusive sales territory covering the United States and Canada; a similarly exclusive spare parts distribution agreement; and a service and warranty agreement, which allowed Miller to hire its own servicing staff. The agency agreement and the service and warranty agreement were between Miller and SLH; the spare parts distribution agreement was between Miller and SAME, S.p.A. All three contracts contained a provision stating that "any controversy or claim arising out of or relating to this Agreement, its execution or breach, shall be settled by arbitration in Rome under the Rules of the Italian Arbitration Association...." Because this crucial arbitration language is the same for all three contracts, we will refer to these three agreements collectively as "the Agreement."

The Agreement bound the parties from September 1, 1989 to December 31, 1990, with automatic annual renewal unless notice of revision or cancellation was given by either party no later than October 1 of the given year. Automatic renewal occurred for 1991.

In late 1990, the Deutz–Allis Corporation, a Delaware corporation with its principal place of business in the state of Georgia, began searching for a supplier of mid-size tractors for its own private label. On April 4, 1991, Deutz–Allis signed an agreement with SLH providing that the SAME group would manufacture tractors tailored to meet the specifications of AGCO, Deutz–Allis' parent company. The tractors were to be sold under the AGCO–Allis name. A second agreement states that spare and service parts would be sold by S & L under the private label agreement. Miller was notified soon after the private label agreement was signed, and apparently failed to object to it at the time.

Miller claims that it began hearing rumors around mid-1991 that SAME intended to terminate its Agreement with Miller, but claims that SAME officials repeatedly assured Miller that no termination decision had been made. On August 18, 1991, John Miller, Miller's president, wrote SAME stating that he did not believe that SAME could legally terminate the Agreement without complying with the Wisconsin Fair Dealership Law, Wis.Stat. ch. 135. Mr. Miller also informed Deutz–Allis that any further activity on its part to solicit a transfer of the SAME brand business to Deutz–Allis would be considered tortious interference with Miller's contract. Miller threatened litigation. Officials at Deutz–Allis responded that they had the legal right to negotiate with SAME.

At a September 2, 1991 meeting, SAME representatives informed Miller that they would not renew the Agreement for 1992. According to Mr. Miller, the SAME officials stated that they intended to deal with Deutz–Allis as of January 1, 1992. SAME officials explained to Mr. Miller that they were dissatisfied with the low volume of sales. On September 19, 1991, Miller re-

ceived written confirmation of the non-renewal of the Agreement with SAME. Miller was not afforded an opportunity to cure the claimed performance deficiency. On September 12, 1991, SLH, S & L, and AGCO, Deutz–Allis' parent company, had signed a distribution agreement under which Deutz–Allis would replace Miller as exclusive SAME brand name sales agent and distributor commencing January 1, 1992.

Miller responded by filing suit in a Wisconsin state court against SLH, S & L, and Deutz–Allis. The defendants, citing diversity jurisdiction, removed the action to the federal district court, in the Eastern District of Wisconsin. 28 U.S.C. §§ 1332 and 1441. The complaint charged that SLH's failure to renew the Agreement was 1) a violation of the Wisconsin Fair Dealership Law, 2) a breach of contract, and 3) the result of a conspiracy between SLH, S & L and Deutz–Allis to injure Miller's business. The complaint also charged S & L and Deutz–Allis with intentional interference with Miller's contractual relations with SLH and intentional interference with Miller's economic expectations relating to the renewal of the Agreement with SLH. Miller requested that the court award damages for the losses suffered. Miller also asked the court to enter an injunction prohibiting SLH from terminating the Agreement with Miller and from granting a dealership contract to Deutz–Allis, and prohibiting S & L and Deutz–Allis from interfering with the Miller/SLH relationship. SLH and S & L moved, pursuant to a provision of the Federal Arbitration Act, 9 U.S.C. § 3, to stay all proceedings in this matter pending arbitration between the parties.

Thereafter, SLH filed suit in the federal district court requesting that the court compel Miller to arbitrate the dispute arising out of the nonrenewal of the Agreement upon which both suits were founded. Both parties moved for summary judgment. The district court held a joint hearing regarding the issues raised in Miller's lawsuit requesting an injunction and in SLH's lawsuit requesting that the court compel arbitration. The court then issued a joint opinion dealing with the issues raised in the two cases. The court ruled that the "arbitration clauses in the contracts in question are unambiguous. Given the sophistication of the contracting parties, I can only conclude that they understood the contractual provision to arbitrate disputes when the agreements were executed. I find these clear expressions of the intent of the contracting parties to be binding." Accordingly, the district court concluded that Miller, in filing its civil suit against the SAME group, "disregarded a clear contractual duty to arbitrate the claims it has asserted." Having determined that the parties were bound to arbitrate the dispute, the district court rejected Miller's request for an injunction blocking SLH's non-renewal of the Agreement, finding that it "implicate[d] the substantive merits of issues squarely within the contracts' broad arbitration clauses." The district court thus granted SLH's motion to compel arbitration in the lawsuit that it filed. As to the claims Miller advanced in its lawsuit against the SAME group, the court denied the motion for an injunction and stayed all the other claims against SAME. Miller has appealed *only* the district court's grant of SLH's motion to compel arbitration in the suit brought by SLH, and has seen fit not to appeal any of the district court's rulings in the suit it brought against the SAME group.

II.

We review *de novo* the district court's grant of summary judgment in favor of SLH. *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990). Summary judgment should be granted only when "no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law." *Central States v. Jordan,* 873 F.2d 149, 152 (7th Cir.1989). In determining whether a genuine issue of material fact exists, "we must view the record and all of the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Beard v. Whitley County REMC,* 840 F.2d 405, 409–10 (7th Cir.1988).

### III.

 Initially, we must determine whether we have jurisdiction to rule on Miller's appeal. Miller asserts that we are empowered to hear this case pursuant to 9 U.S.C. § 16 ("Section 16"), the section of the Arbitration Act which governs the appealability of district court orders granting or denying motions to compel arbitration. In *Perera v. Siegel Trading Company*, 951 F.2d 780, 783 (7th Cir.1992), we held that under Section 16 *"final* decisions granting arbitration are appealable and *interlocutory* decisions granting arbitration are not." (emphasis added).[2] Since Section 16 does not define the term "final decision," "nor does it indicate an intent to change the preexisting judicial interpretation of this term of art," we reasoned that in drafting Section 16 Congress intended to retain the preexisting meaning of the term. *Id.* After surveying the case law, we concluded that decisions granting arbitration are final when they are made in "cases in which arbitration is the only claim for relief." *Id.* at 784. In contrast, when an arbitration order is entered "in the midst of a proceeding for other relief," (i.e., an embedded proceeding), then that order is interlocutory and not appealable. *Id.* at 783, 784. We explained that

> "[t]he basis for distinguishing between cases where the sole claim for relief is arbitration and those cases where a party requests arbitration in a proceeding for other relief [an embedded proceeding] is that in the latter case the underlying merits of the claims for relief are not resolved until arbitration is completed, and indeed judicial review is often necessary for this award to become enforceable.... In contrast, where the only claim for relief is a petition for arbitration, once arbitration is granted the court has resolved the only issue before it."

Id. at 784 (citations omitted). Thus, "this court finds arbitration orders final [and therefore appealable] if arbitration is the sole issue before the court and interlocutory [and therefore not appealable] if raised in an embedded proceeding." *Id.* at 785. *See also Stedor Enterprises v. Armtex,* 947 F.2d 727, 731 (4th Cir.1991); *In the Matter of Chung and President Enterprises,* 943 F.2d 225, 228 (2d Cir.1991); *Apollo Computer, Inc. v. Berg,* 886 F.2d 469, 471–72 (1st Cir.1989).

Miller's appeal is from the trial court's decision granting SLH's motion to compel arbitration. No other claim was made in that proceeding other than SLH's request for arbitration. Nevertheless, SLH suggests in its brief that we are without jurisdiction to hear this appeal because the motion to compel arbitration could be considered part of an embedded proceeding.[3] This argument is based on the connection between the proceeding Miller appealed (SLH's successful action to compel arbitration) and the action Miller filed in the district court against SLH, S & L, and Deutz–Allis. SLH argues in its brief that although the two actions were distinct in that they were assigned separate case numbers, the district court treated them as one case, holding a joint hearing to consider both actions and issuing a joint opinion denying the request for an injunction in the action brought by Miller and granting the motion to compel arbitration in the action brought by SLH.

We decline to create an exception to our holding in *Perera* that Section 16 of the Arbitration Act grants us jurisdiction to hear appeals from orders compelling arbitration entered in actions in which no other issues are raised. Although the Miller injunction suit and the SLH arbitration suit are undeniably closely related, the two actions were never consolidated by the district court pursuant to Fed.R.Civ.P. 42(a).[4]

---

**2.** Section 16(a)(3) provides that "[a]n appeal may be taken from ... a final decision with respect to an arbitration...." Section 16(b) prohibits the appeal of "interlocutory orders" granting arbitration.

**3.** At oral argument, counsel for SLH stated that he believed we *do* have jurisdiction to hear the appeal.

**4.** Fed.R.Civ.P. 42(a) provides that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in

The only issue before us on appeal is the district court's entry of summary judgment in favor of SLH on its action to compel arbitration. SLH cites no authority for the proposition that an otherwise final arbitration order entered in an independent proceeding is transformed into an interlocutory order because related litigation is pending in the district court. Rule 42(a) allows a district court, if it deems it proper, to consolidate a request for arbitration with other pending litigation, thus preventing any manipulation of the rules of appealability.[5] Since Miller's appeal arises from a successful independent proceeding to compel arbitration, we have jurisdiction to hear it under *Perera*.

## IV.

Miller advances three arguments in support of its contention that the district court erred in granting SLH's motion to compel arbitration.

## A.

 Miller's first argument is that the district court improperly construed the language of the arbitration clauses in the Agreement between SLH and Miller. Whether a contract creates a duty for the parties to arbitrate a dispute is a question to be decided by the court, not the arbitrator, unless the parties clearly and unmistakably provide otherwise. *International Association of Machinists v. Fansteel, Inc.*, 900 F.2d 1005, 1010 (7th Cir.), *cert. denied*, 498 U.S. 851, 111 S.Ct. 143, 112 L.Ed.2d 109 (1990) (quoting *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). "It has been established that where the contract contains an arbitration clause, there is a

presumption in favor of arbitration in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* (citation omitted). "Despite this presumption in favor of arbitration, a court can compel arbitration only in accordance with the parties' contract...." *International Union of Operating Engineers v. Indiana Construction Corporation*, 910 F.2d 450, 453 (7th Cir. 1990).

The Agreement between Miller and SLH contained the following two provisions:

"This agreement will be construed in accordance with and governed by the laws of the Republic of Italy, except those laws governing Agents and Distributors.

"Notwithstanding the domicile, citizenship, residency, or place of incorporation of any party hereto, it is agreed that the forum for the resolution of disputes hereunder shall be in Italy. The parties agree that any controversy or claim arising out of or relating to this Agreement, its execution or breach, shall be settled by Arbitration in Rome under the Rules of the Italian Arbitration Association...."

Miller's basic contention is that this arbitration clause does not cover the instant dispute because the legality of SLH's nonrenewal of the Agreement is governed by the Wisconsin Fair Dealership Law, Wis. Stat. ch. 135. The Fair Dealership Law applies to all persons who are grantees of dealerships in Wisconsin. Wis.Stat. § 135.-02(2). A dealership is defined as a contract wherein a person is "granted the right to

issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

5. Such attempts at manipulation are unlikely. Decisions denying arbitration are immediately appealable, whether they arise in independent or embedded proceedings, or are final or interlocutory. 9 U.S.C. § 16(a)(1)(2); *Perera*, 951 F.2d at 783. When an order *compels* arbitra-

tion, as we stated above, it is appealable only if it arises in an independent proceeding, but the party *opposing* arbitration is presumably the one who would desire immediate appellate review of decisions favoring arbitration. Thus, a litigant like SLH would gain nothing from filing an independent proceeding for arbitration since it would risk having a favorable decision overturned immediately on appeal.

sell or distribute goods or services" when there exists a "continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods and services...." Wis.Stat. § 135.02(1) & (3). Under the Fair Dealership Law, the grantor may not refuse to renew a dealership without good cause, Wis.Stat. § 135.03, and must provide the dealer with at least 90 days' prior written notice of nonrenewal of the dealership, and allow the dealer 60 days to cure any claimed deficiency in its performance. Wis.Stat. § 135.04.

Miller contrasts the terms of the Fair Dealership Law with the Agreement it entered into with SLH. Under the terms of the Agreement, SLH was free to refuse to renew the Agreement for any reason and was not required to give Miller an opportunity to cure any claimed deficiency. Miller maintains that SLH's nonrenewal of the Agreement "arguably did not breach the stated terms and provisions" of the Agreement, but was in violation of the Fair Dealership Law. Miller concludes that the dispute over SLH's nonrenewal does not "arise out of or relate to" the Agreement, but instead arises out of the provisions of the Fair Dealership Law, and is thus not within the coverage of the arbitration clause.

█ In evaluating Miller's analysis, we keep in mind the controlling presumption that arbitration is favored "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Fansteel*, 900 F.2d at 1010 (emphasis added). Turning to Miller's argument, we observe that the plain language of the arbitration clause undermines Miller's attempt to draw a distinction between claims which arise out of a *breach* of the Agreement, and claims which arise from some other source, such as state statutory law. As we noted above, Miller suggests that no breach of the Agreement has occurred and that therefore the arbitration clause is not triggered. But the arbitration clause encompasses "any controversy or claim arising out of or relating to the Agreement, its

execution *or* breach" (emphasis added). Even if no breach of the Agreement has occurred, if the dispute "arises out of or relates" to the Agreement or its execution, it is subject to arbitration.

This dispute is clearly encompassed by the arbitration clause's broad language. Simply because Miller has asserted a claim based on the Fair Dealership Law does not mean that the claim does not arise from or relate to the Agreement. As the district court aptly observed, "a claim [such as Miller's] that draws its very essence from the fact of and performance under the [Agreement] in question—a claim whose whole point is to keep [the Agreement] in force" necessarily is a claim that arises out of and relates to the Agreement, its execution or its breach, even though the claim may be statutory in nature. The connection between the Agreement and Miller's statutory claim is especially clear in this case because a predicate for any claim under the Fair Dealership Law is the existence of a contract or agreement. Wis. Stat. § 135.02(3). We find it impossible to imagine how a claim that rests on the very existence of an Agreement, does not "arise out of or relate to the Agreement, its execution or breach." *See Good(e) Business Systems, Inc. v. Raytheon Co.*, 614 F.Supp. 428, 429, 430 (W.D.Wis.1985) (The arbitration clause providing for arbitration of disputes "arising in connection with" a contract is "broad enough to cover the [Wisconsin] fair dealership claim, which is itself rooted in contract.")

Miller argues that the provision in the Agreement that its terms will be "construed in accordance with and governed by" Italian law *"except those laws governing Agents and Distributors"* (emphasis added) is evidence that the parties intended that any dispute over the nonrenewal of the agreements would not be subject to arbitration in Italy, but rather would be resolved in Wisconsin courts applying the Wisconsin Fair Dealership Law. That is why, Miller asserts, the parties did not extend the application of Italian law to the subjects of agents and distributors. We disagree with this reading of the Agreement. Miller seems to argue that the

Agreement's silence on the law governing agents and distributors must mean that the parties chose Wisconsin law to control this area. As the district court noted, "the refusal to choose Italian distributorship law contractually does not imply a contractual choice of any other particular jurisdiction's distributorship law. It simply implies a refusal to contractually choose *any* jurisdiction's distributorship law." More fundamentally, as SLH argues in its brief, the Agreement's express exclusion of agents and distributors from its general choice of Italian law actually *undermines* Miller's central argument in this appeal. The exclusion demonstrates that the parties realized that disputes over the distributorship were so closely connected to the Agreement that they had to be expressly excluded from the Agreement's general choice of law provision. Miller and SLH evidently believed that, absent the exclusion, the general choice of Italian law would be read to cover distributorship claims. This is powerful evidence against Miller's position that claims based on the termination of the distributorship are not in any way related to the Agreement; the parties themselves anticipated that such claims would be tied directly to the Agreement. Miller counters that if the parties had intended to force arbitration of distributorship claims, they would have expressly stated that the arbitration clause applied to any dispute relating to the "Agreement or its execution or breach or any nonrenewal or termination under the law of Agents and Distributors." No doubt such specificity would have made this an even easier case, but the language the parties *did* agree to is broad enough to cover this dispute. A claim that is triggered by the termination of an agreement (as is this one), necessarily arises out of and relates to the agreement, its execution or its breach.

 Miller suggests that it is somehow improper for disputes involving Fair Dealership Law claims to be arbitrated. It is not. Although Miller's claim is based upon the Fair Dealership Law, the parties still agreed in the contract to resolve their disputes arising out of or relating to this Agreement through arbitration. The Su-preme Court has made clear that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). " '[W]e are well past the time when judicial suspicion of the desirability of arbitration and the competence of arbitral tribunals' should inhibit enforcement of the [Arbitration] Act 'in controversies based on statutes.' " *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626–27, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

Nevertheless, Miller seems to maintain that Fair Dealership Law claims should be exempted from this general rule. In its reply brief, Miller argues that the "net effect" of the district court's decision to compel arbitration "is tantamount to a waiver of the Fair Dealership law protection in violation of the public policy of the state of Wisconsin." Appellant's reply brief at 7. Miller argues that if its claims are arbitrated in Italy, it will have "no assurance that Wisconsin law will be applied and no recourse if it is not applied." (Under the Rules of Italian Arbitration, if the parties have not specified by contract the substantive law to be applied (as they have not here with respect to agents and distributors), the arbitrator applies the rules of law he deems appropriate; the decisions of Italian arbitrators are not appealable.) It was suggested at oral argument that this state of affairs is particularly inappropriate in disputes founded on Fair Dealership Law claims because the Law states that its effect "may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only." Wis.Stat. § 135.025(3). The Wisconsin Fair Dealership Law also provides that its terms will apply "to provisions for the binding arbitration of disputes contained in a dealership agreement" unless the dealership agreement provides protections to the dealer equivalent to those of

the Fair Dealership Law. Wis.Stat. § 135.-05.

The Supreme Court has rejected the argument that a state statute can void the choice of private parties to arbitrate a dispute. In *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court was confronted with a provision of the California Franchise Investment Law which provided that "[a]ny condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void." *Id.* at 10, 104 S.Ct. at 858. The California Supreme Court had interpreted that provision "to require judicial consideration of claims brought under" the Franchise Investment Law, *id.* at 5, 104 S.Ct. at 855, even though the parties in *Southland* had contracted to resolve by arbitration "[a]ny controversy or claim arising out of or relating to [their] Agreement or [its] breach...." *Id.* at 4, 104 S.Ct. at 855 (language almost identical to the Agreement's). The Supreme Court reversed, holding that "so interpreted the California Investment law directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause." *Id.* at 10, 104 S.Ct. at 858.[6] The Court held that there are only "two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract 'evidencing a transaction involving commerce' and such clauses may be revoked upon 'grounds as exist at law or in equity for the revocation of any contract.' " *Id.* at 10–11, 104 S.Ct. at 858 (quoting from the Arbitration Act, 9 U.S.C. § 2). The court saw "nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." *Id.* at 11, 104 S.Ct. at 858. Section 2, the Court concluded, "withdrew the power of the states to

require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Id.* at 10, 104 S.Ct. at 858.

Only two reported decisions, one by a federal district court and one by a Wisconsin appellate court, have discussed the application of *Southland* to disputes involving the Fair Dealership Law. Both courts concluded that the Law's provisions cannot void the effect of an arbitration clause. In *Good(e)*, a court in this circuit expressly considered the argument, raised indirectly by Miller, that the "Wisconsin Fair Dealer Law precludes arbitration of claims [arising under it], unless certain conditions are met." 614 F.Supp. at 430. The district court judge, relying on *Southland*, held that "[s]tates simply lack the power to enact limits on the arbitrability of commercial contracts that go beyond [the limits] contained in 9 U.S.C. § 2," and rejected the claim that the Fair Dealership Law could render void an agreement to arbitrate claims arising under it. *Id.* at 431. In *Madison Beauty Supply, Ltd. v. Helene Curtis, Inc.*, 481 N.W.2d 644, 647, 167 Wis.2d 237, (App.1992), a Wisconsin state appellate court adopted the reasoning spelled out in *Good(e)* and held that provisions of the Fair Dealership law "that purport to limit the arbitrability of fair dealership claims otherwise within the scope of 9 U.S.C. § 2 conflict with federal law and are therefore preempted." The *Madison* court reasoned that whether the agreement containing the arbitration clause was a dealership contract within the meaning of the Fair Dealership Law was irrelevant in determining the arbitrability of the dispute. *Id.* The only relevant question was whether the dispute was covered by the language of the arbitration clause. *Id.* If it was, then the court was required to grant the motion to compel arbitration.

---

**6.** Section 2 of the Arbitration Act provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an

agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2.

We agree with the *Good(e)* and *Madison* courts that the Supreme Court's decision in *Southland* forecloses the argument that disputes involving Fair Dealership Law claims are not arbitrable. Miller and SLH chose through the Agreement to arbitrate disputes such as the one that has arisen. The possibility that Miller has advanced colorable Fair Dealership Law claims does not void the parties' clear choice for arbitration.[7]

### B.

■ Miller argues that even if the arbitration clause is applicable to the instant dispute, arbitration should not be compelled because SLH waived its contractual right to arbitration when it refused to renew the Agreement. Miller contends that since SLH knew that Miller believed the Fair Dealership Law barred any nonrenewal, SLH was required to submit the dispute to arbitration and could not act unilaterally to terminate the Agreement.

■ A party may waive its contractual right to arbitrate a dispute. *St. Mary's Medical Center v. Disco Aluminum Products Company*, 969 F.2d 585, 587 (7th Cir. 1992). Waiver can be either express or inferred, and since SLH did not expressly waive its right to arbitrate this dispute, the question is whether the district court should have inferred waiver from SLH's actions. *Id.* "There is no rigid rule as to what constitutes a waiver of an arbitration agreement." *Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir.1990). "The essential question is whether, based on the circumstances, the alleged defaulting party has acted inconsistently with the right to arbitrate." *St. Mary's*, 969 F.2d at 588; *see also Mages*, 916 F.2d at 405.

We agree with the district court that the record is barren of any evidence that SLH waived its right to arbitrate this dispute.

Miller cites no authority in support of the proposition that SLH was required to submit to arbitration before exercising its right under the Agreement to refuse to renew. In *Mages*, we held that the defendant's refusal to make a payment due on a promissory note because it believed its debt under the note was subject to a set-off did not constitute a waiver of the defendant's right to arbitrate the ensuing dispute. 916 F.2d at 403, 404. We held that the district court's contrary ruling

"confused [the defendant's] possible 'default' under the Note in paying the [plaintiff] with the sense in which the word 'default' is used to signify that a party has waived its arbitration right by acting inconsistently with that right. When a party moves to stay judicial proceedings and compel arbitration, a court 'may consider only issues relating to the making and performance of the agreement to arbitrate.' *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).... The district court did more than construe the arbitration agreement, it considered matters that the parties had contracted to refer to an arbitrator. Whether [the defendant] defaulted under the Note and the extent of its debt to the [plaintiff] were issues the parties agreed to arbitrate under the Agreement, which broadly stated that '[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, will be settled by arbitration....'"

*Mages*, 916 F.2d at 404. Accordingly, we held that the defendant had not acted inconsistently with its arbitration right in stopping payment on the promissory note. *Id.* at 405.

We have before us a similar factual situation. Miller and SLH contracted to arbitrate "any controversy or claim arising out

7. In *Volt Information Sciences v. Board of Trustees*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989), the Supreme Court considered a contract which provided for arbitration of all disputes arising out of or relating to the contract and which chose California law to govern the contract's terms. The Court held that the parties' choice of California law to govern their contract incorporated California's rules of arbitration to govern their arbitration agreement. *Volt* is inapplicable to this case because here the parties did not choose Wisconsin law to govern their agreement.

of or relating to [their] Agreement, its execution or breach." Miller's claim that SLH acted illegally when it refused to renew the Agreement is just the sort of controversy the parties intended to settle through arbitration, and therefore the nonrenewal cannot be understood to be inconsistent with SLH's right to arbitrate. SLH never evinced a desire to settle this matter through any process other than arbitration. *See Mages*, 916 F.2d at 405. SLH did not waive its right to arbitrate this dispute.

### C.

■ Miller's final argument is that the arbitration clause in the Agreement is not enforceable because Miller, under economic duress, was forced by SLH to accept the clause. An arbitration clause will not be enforced if it resulted from "the sort of ... overwhelming economic power that would provide grounds for the revocation of any contract." *Mitsubishi*, 473 U.S. at 627, 105 S.Ct. at 3354. Miller alleges that in 1989 the SAME group promised that their contractual relationship would be renewed on equivalent terms. In reliance on this understanding, Miller claims to have incurred substantial financial obligations readying for the expansion in business with SAME. Only after it had made these investments did SAME then begin insisting on the arbitration clause eventually incorporated into the Agreement. Miller claims that it was compelled to accept the arbitration clause because it feared "that it would lose its most important part of the SAME network—the parts distribution for North America" if it did not go along with SLH's insistence on making the arbitration clause part of the Agreement. Appellant's brief at 30.

■ To make a claim of economic duress under Wisconsin law[8], Miller must allege facts that demonstrate that "a wrongful or unlawful act or threat" by SLH deprived Miller of its "unfettered free will" and forced it to accept the arbitration clause in the 1989 Agreement. *Pope v. Ziegler*, 127 Wis.2d 56, 377 N.W.2d 201, 203 (App.1985). Moreover,

"[a]s a direct result of these elements, the party threatened must be compelled to make a disproportionate exchange of values or to give up something for nothing. If the payment or exchange is made with the hope of obtaining gain, there is not duress; it must be solely for the purpose of protecting the victim's business or property interests.... A threat to do what the person making the threat has the legal right to do does not constitute duress; nor does driving a hard bargain or taking advantage of another's financial difficulty."

*Id.* (quoting *Wurtz v. Fleischman*, 97 Wis.2d 100, 293 N.W.2d 155, 158, 160 (1980)).

Miller falls far short of meeting this standard. As SLH points out, Miller does not claim that anyone associated with the SAME group threatened the immediate cancellation of the parts distribution contract if Miller did not accept the arbitration clause in the new Agreement. Therefore, Miller has not pointed to a "wrongful or unlawful act or threat" on the part of SLH, a necessary predicate for an economic duress claim. *Pope*, 377 N.W.2d at 203. Moreover, the record makes clear that Miller did not assent to the Agreement *solely* to protect its business; it also hoped to make a gain through the expansion of its relationship with SAME. That Miller was at least in part motivated by the expectation of increased profits from the expansion of its business with the SAME group is also fatal to Miller's effort to evade the force of the arbitration clause by a claim of economic duress. *Id.*

### V.

The district court's ruling granting SLH's motion to compel arbitration is

AFFIRMED.

---

**8.** The parties agree that Wisconsin law is controlling.