The **PRUDENTIAL INSURANCE CO. OF AMERICA, a New Jersey Corporation,** Petitioner–Appellee,

v.

**Justine LAI; Elvira Viernes,** Respondents–Appellants.

No. 92–55902.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1993.

Decided Dec. 20, 1994.

---

John S. West and Michael Maroko, Carla D. Barboza, Allred, Maroko, Goldberg, & Ribakoff, Los Angeles, CA, for respondents-appellants.

Kenwood C. Youmans, Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, CA, for petitioner-appellee.

Jon W. Davidson, California Women's Law Center, Los Angeles, CA, for amicus curiae for respondents-appellants.

Thomas G. Wood, Brown & Wood, San Francisco, CA, for Securities Industry Ass'n, Inc., for amicus curiae for petitioner-appellee.

Before: HUG, SCHROEDER, and WILLIAM A. NORRIS,* Circuit Judges.

Opinion by Judge SCHROEDER,

Concurrence by Judge NORRIS.

SCHROEDER, Circuit Judge:

This is an appeal from a district court order compelling arbitration, under the Federal Arbitration Act, of statutory sexual harassment and discrimination claims. The appellants filed their claims in state court, alleging that while employed by appellee Prudential Insurance Company in 1989 and 1990, they were the victims of serious sexual discrimination and abuse by their supervisor. Prudential then filed this independent action in federal court to compel arbitration.

The district court entered an order compelling arbitration and staying the state court proceedings, based upon the arbitration clause incorporated into the Standard Applications for Securities Industry Registration ("the U-4 forms") appellants signed. We hold that the district court's order is appealable, and we reverse because appellants did not knowingly enter into any agreement to arbitrate employment disputes.

## I. BACKGROUND

Justine Lai and Elvira Viernes were employed as sales representatives by the Prudential Insurance Company of America. When applying for their positions, appellants

were required to sign U-4 forms containing agreements "to arbitrate any dispute, claim or controversy that ... is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register." Plaintiffs subsequently registered with the National Association of Securities Dealers, which requires that disputes "arising in connection with the business" of its members be arbitrated.

Plaintiffs allege that when they signed the U-4 form, they were told only that they were applying to take a test which was required for their employment by Prudential, and that they were simply directed to sign in the relevant place without being given an opportunity to read the forms. Arbitration was never mentioned, and plaintiffs were never given a copy of the NASD Manual, which contains the actual terms of the arbitration agreement.

On November 30, 1990, appellants sued Prudential and their immediate supervisor in state court on a variety of state law claims, alleging that the supervisor had raped, harassed, and sexually abused them in a number of ways. Prudential then filed this action in federal district court, asking the court to compel arbitration of appellants' state law claims, and to stay the state court proceedings. The district court granted both of Prudential's motions.

## II. APPEALABILITY

Before oral argument, this court issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction. Both sides have briefed the jurisdictional issue, and we now hold that we have jurisdiction over the appeal, because the district court's order compelling arbitration was an appealable final decision.

As a general rule, pro-arbitration decisions are not appealable final judgments. The Federal Arbitration Act ("FAA") provides that:

---

* Although Judge Aldisert participated in the oral argument in this case, he recused and did not participate in the final decision. Judge Norris

was drawn to replace him and has reviewed the record and briefs and listened to the tape of oral argument.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16. However, § 16(a)(3) of the FAA contains an exception to the general rule: a party may appeal any "final judgment with respect to an arbitration." 9 U.S.C. § 16(a)(3).

 As the appellants in this case correctly point out, every court that has considered the issue to date has concluded that if the motion to compel arbitration in a given case is the only claim before the district court, a decision to compel arbitration is deemed to dispose of the entire case, and permit appellate review under 9 U.S.C. § 16(a)(3). *Gammaro v. Thorp Consumer Discount Co.,* 15 F.3d 93 (8th Cir.1994); *S+L+H, S.p.A. v. Miller–St. Nazianz, Inc.,* 988 F.2d 1518 (7th Cir.1993); *Filanto v. Chilewich Int'l,* 984 F.2d 58 (2d Cir.1993); *McDermott Int'l v. Underwriters at Lloyd's,* 981 F.2d 744 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993); *Stedor Enterprises, Ltd. v. Armtex, Inc.,* 947 F.2d 727 (4th Cir.1991); *Matter of Chung and President Enterprises Corp.,* 943 F.2d 225 (2d Cir.1991); *Arnold v. Arnold Corp.,* 920 F.2d 1269 (6th Cir.1990); *Thompson McKinnon Securities, Inc. v. Salter,* 873 F.2d 1397 (11th Cir.1989). On the other hand, if the motion to compel arbitration is "embedded" in a substantive suit pending before that court, the district court's decision to compel arbitration of some or all of the claims before it is not considered to be final, and therefore not reviewable. *See, e.g., Perera v. Siegel Trading Co.,* 951 F.2d 780 (7th Cir.1992) (district court ordered some claims to arbitration and stayed judicial resolution of the remainder pending arbitration). This interpretation of the FAA is supported by the Practice Commentary following § 16 in the Annotated Code, which states quite plainly that § 16

does permit immediate appellate review of pro-arbitration decisions in independent proceedings. David D. Segal, Practice Commentary following 9 U.S.C.A. § 16 (Supp. 1993). We must decide whether Prudential's suit to compel arbitration in this case is an "independent" or an "embedded" proceeding.

 We agree with appellants that the proper focus in such a determination is only on the case appealed. The fact that a separate but related proceeding is pending in state court cannot transform the independent federal court action into an embedded proceeding. *See Miller–St. Nazianz,* 988 F.2d 1518 (order compelling arbitration final appealable order even though related, but separate, case was pending before same judge). The decision to compel arbitration settled everything that was before the district court in this case. Because the case at bar is an independent proceeding in the federal courts, we hold that the district court's order compelling arbitration is an appealable final decision.

### III. ARBITRABILITY

The only agreement to arbitrate that appellants actually executed was contained in the U–4 form. Item number 5 on page 4 of the U–4 form states:

I agree to arbitrate any dispute, claim or controversy that may arise between me or my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or bylaws of the organizations with which I register....

This provision does not in and of itself bind appellants to arbitrate any particular dispute. To see what appellants possibly could have agreed to arbitrate, we must turn to the arbitration requirements of the NASD, which appellants eventually joined. The NASD manual states:

Any dispute, claim or controversy eligible for submission under part I of this Code between or among members and/or associated persons ... arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), shall be arbitrated under this Code....

NASD Manual, Code of Arbitration Procedure ¶ 3708.

Appellants contend that these provisions do not bind them to arbitrate their employment discrimination claims because they were unaware that they signed any document that contained an arbitration clause, they were never given copies of the NASD manual, and they were not otherwise on notice that they might be agreeing to arbitrate employment disputes. They further contend that even if they had known that they were agreeing to the NASD arbitration provision, its language does not cover employment disputes.

■ Appellants rely on *Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), to support their argument that they are not bound to arbitrate their statutory claims. *Alexander* held that an arbitration clause contained in a collective bargaining agreement could not supplant Title VII's statutory remedies,[1] and the decision was widely interpreted as prohibiting any form of compulsory arbitration of Title VII claims. *See, e.g., Utley v. Goldman Sachs & Co.*, 883 F.2d 184 (1st Cir.1989), *cert. denied*, 493 U.S. 1045, 110 S.Ct. 842, 107 L.Ed.2d 836 (1990); *EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1431 (9th Cir.1983) (en banc) (court should reach question, and hold that prior consent decree cannot bar later Title VII claims under *Alexander*) (Fletcher, C.J. concurring). The Supreme Court, however, without overruling *Alexander*, subsequently held that individuals may contractually agree to arbitrate employment disputes and thereby waive the statutory rights to which they would otherwise be entitled. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

■ *Gilmer*, upon which Prudential heavily relies, made it clear that the ADEA does not bar agreements to arbitrate federal age discrimination in employment claims.[2] Our circuit has extended *Gilmer* to employment discrimination claims brought under Title VII. *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932 (9th Cir.1992); *see also Spellman v. Securities, Annunities, & Ins. Svc.*, 8 Cal.App.4th 452, 10 Cal.Rptr.2d 427 (1992) (applying *Gilmer* to state statutory employment discrimination claims). The issue before us, however, is not whether employees may ever agree to arbitrate statutory employment claims; they can. The issue here is whether these particular employees entered into such a binding arbitration agreement, thereby waiving statutory court remedies otherwise available.

■ The district court did not decide whether the arbitration clause was enforceable, agreeing with Prudential's threshold argument that enforceability of appellants' agreement to arbitrate is a question for the arbitrator to decide in the first instance. Prudential and the district court relied on *Prima Paint Corp. v. Flood & Conklin Manufacturing*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The issue in *Prima Paint*, however, involved an interpretation of the FAA alone. The Court held that under that statute, the question of whether an entire contract, containing an arbitration clause, had been induced by fraud, was one for the arbitrator to decide. The issue in this case, by contrast, is under what circumstances individuals may be deemed to have waived their rights to pursue remedies created by Title VII and related legislative enactments. The Supreme Court's analysis in *Prima Paint* is therefore not applicable in this case.[3] Questions of whether Congress

---

1. Parallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 477, 102 S.Ct. 1883, 1895, 72 L.Ed.2d 262 (1982); *Salgado v. Atlantic Richfield*, 823 F.2d 1322, 1326 (9th Cir.1987). Thus, the FAA has the same application to state law claims like those appellants raise as it does to Title VII claims.

2. Appellants contend that the Civil Rights Act of 1991 overruled that holding. Because of our

resolution of this case, we find it unnecessary to reach that issue.

3. Even under *Prima Paint's* analysis, moreover, the enforceability of this arbitration agreement would be a question for the courts. In *Prima Paint*, the Supreme Court held that under § 4 of the Arbitration Act, courts should decide only disputes that are targeted at the making of the arbitration agreement itself, and not the making of the contract as a whole. Here, however, the contractual challenge relates only to the arbitra-

intended, in the enactment of other statutes, to prevent or limit the arbitrability of statutory claims have routinely been decided by the courts. *See, e.g., Gilmer,* 500 U.S. 20, 111 S.Ct. 1647 (court decided whether or not employment disputes were arbitrable by looking to whether Congress intended to preclude arbitration of those claims); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 227–28, 107 S.Ct. 2332, 2337–38, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Alexander,* 415 U.S. 36, 94 S.Ct. 1011. Thus, the issue of arbitrability in this case is for the court.

■ Appellants contend in effect that even after the Supreme Court's decision in *Gilmer,* employees cannot be bound by an agreement to arbitrate employment discrimination claims unless they knowingly agreed to arbitrate such claims. We agree with appellants that Congress intended there to be at least a knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and related state statutes. Such congressional intent, which has been noted in other judicial decisions, is apparent from the text and legislative history of Title VII.

Prior to 1991, of course, Title VII had been interpreted to prohibit any waiver of its statutory remedies in favor of arbitration, even a knowing waiver. *See, e.g., Children's Hospital Medical Center,* 719 F.2d at 1431 (relying on *Alexander,* 415 U.S. at 47–51, 94 S.Ct. at 2667–69). As the Supreme Court recognized:

Legislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination. In the Civil Rights Act of 1964, Congress indicated that they considered the policy against discrimination to be of the "highest priority." Consistent with this view, Title VII provides for consider-

ation of employment discrimination claims in several forums. And, in general submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. 415 U.S. at 47–48, 94 S.Ct. at 1019.

This conclusion was reinforced by the recent enactment of the Civil Rights Act of 1991. Section 118 of that Act states: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolutions including, ... arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." § 118 of Pub.L. 102–166, set forth in the notes following 42 U.S.C. § 1981 (Supp.1994). One House report explained that the purpose of that section was to increase the possible remedies available to civil rights plaintiffs:

Section 216 [of the 1991 Act] encourages the use of alternative means of dispute resolution ... where appropriate and to the extent authorized by law.... The committee emphasizes ... that the use of alternative dispute resolution mechanisms is intended to supplement, not supplant, the remedies provided by Title VII. Thus, for example, the committee believes that any agreement to submit disputed issues to arbitration, whether in the context of a collective bargaining agreement or in an employment contract, does not preclude the affected person from seeking relief under the enforcement provisions of Title VII. This view is consistent with the Supreme Court's interpretation of Title VII in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36 [94 S.Ct. 1011, 39 L.Ed.2d 147] (1974). The committee does not intend for the inclusion of this section to be used to preclude rights and remedies that would otherwise be available.

HR Rep. No. 40(I) 102nd Cong. 1st Sess., reprinted in 1991 U.S.C.C.A.N. 549, 635.

tion clause. The validity or invalidity of the contract created by the U–4 form and its provisions has no bearing whatsoever on this case, aside from the agreement to arbitrate. *See also McNally Pittsburg, Inc. v. Int'l Assoc. of Bridge,*

*Structural, & Ornamental Iron Workers,* 812 F.2d 615 (10th Cir.1987) (question of whether general contractor had knowingly signed agreement containing arbitration clause was for the court).

Speaking of proposed § 118, Senator Dole explicitly declared that the arbitration provision encourages arbitration only "where the parties knowingly and voluntarily elect to use these methods." 137 Cong.Rec.S. 15472, S. 15478 (Daily Ed. October 30, 1991, statement of Senator Dole).

 This congressional concern that Title VII disputes be arbitrated only "where appropriate," and only when such a procedure was knowingly accepted, reflects our public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes. *See Alexander,* 415 U.S. at 47, 94 S.Ct. at 1019. This is a policy that is at least as strong as our public policy in favor of arbitration. Although the Supreme Court has pointed out that plaintiffs who arbitrate their statutory claims do not "forego the substantive rights afforded by the statute," *Mitsubishi Motors,* 473 U.S. at 628, 105 S.Ct. at 3354, the remedies and procedural protections available in the arbitral forum can differ significantly from those contemplated by the legislature. In the sexual harassment context, these procedural protections may be particularly significant.[4] Thus, we conclude that a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration. *See* Civil Rights Act of 1991; *cf. Gardner,* 415 U.S. at 51–52, 94 S.Ct. at 1021–22 (discussing possible waiver of Title VII rights); *Gilmer,* 500 U.S. 20, 111 S.Ct. 1647 (clause providing for arbitration of disputes "arising out of the employment or termination of employment" binding on "experienced businessman"); *Mago,* 956 F.2d 932 (same); *Spellman v. Securities Annuities and Insurance Services,* 8 Cal.App.4th 452, 10 Cal.Rptr.2d 427 (1992) (same).

 In this case, even assuming that appellants were aware of the nature of the U–4 form, they could not have understood that in signing it, they were agreeing to arbitrate sexual discrimination suits. The U–4 form did not purport to describe the types of disputes that were to be subject to arbitration. Moreover, even if appellants had signed a contract containing the NASD arbitration clause, it would not put them on notice that they were bound to arbitrate Title VII claims. That provision did not even refer to employment disputes. Indeed, in a case involving an age discrimination claimant, the Seventh Circuit has held that as a matter of law the NASD provision relevant to this appeal did not cover employment disputes. *Farrand v. Lutheran Broth.,* 993 F.2d 1253 (7th Cir.1993); *but see Kidd v. Equitable Life Assurance Society,* 32 F.3d 516 (11th Cir. 1994). Our decision does not rest exclusively upon the precise language of the clause in the U–4 manual, for it is clear and undisputed on this record that the employment contract with Prudential that plaintiffs executed did not describe any disputes the parties agreed to arbitrate.

We therefore hold that appellants were not bound by any valid agreement to arbitrate these employment disputes, because they did not knowingly contract to forego their statutory remedies in favor of arbitration.

The order of the district court is VACATED AND THE MATTER REMANDED for the district court to dismiss Prudential's complaint.

WILLIAM A. NORRIS, Circuit Judge, concurring.

In *Farrand* . . . , a case decided after the district court order in this case, the Seventh Circuit disposed of an appeal identical to the one before us on the narrow ground that the National Association of Securities Dealers (NASD) rules do not require the arbitration of employment disputes. I agree with *Farrand,* as does the majority. *See* op. at 1305. I also agree with the Seventh Circuit that the inapplicability of the NASD arbitration rules to employment disputes is dispositive of the question of whether an employee governed by those rules may be required to arbitrate a discrimination claim.

---

4. In California, for example, the privacy rights of victims of sexual harassment are protected by statutes limiting discovery and admissibility of plaintiffs' sexual history in a judicial proceeding. *E.g.* Cal.Evid.Code §§ 782, 1106; Cal.Civ.Proc. Code § 2017(d). In addition, in an area as per-

sonal and emotionally charged as sexual harassment and discrimination, the procedural right to a hearing before a jury of one's peers, rather than a panel of the National Association of Securities Dealers, may be especially important.

The majority, however, for reasons that escape me, finds it necessary to go on to hold (1) that Congress intended that employees can only *knowingly* waive their right to adjudicate employment discrimination claims, and (2) that the particular employees in this case did not knowingly waive that right. I express no opinion on either of these issues because I see no need to reach them. I am concerned, however, that the majority engages in appellate fact-finding by holding that these particular employees did not knowingly waive their trial rights, even though the district court never made a finding on the issue. The question of a knowing waiver of rights is so highly fact-sensitive that it should rarely, if ever, be decided in the first instance by an appellate court.

I concur in the judgment for the reasons stated in *Farrand.*