**LAWI/CSA CONSOLIDATORS, INC.,
dba: Consolidators Handling Co.,
Plaintiff–Appellee,**

v.

**WHOLESALE AND RETAIL FOOD DISTRIBUTION, TEAMSTERS LOCAL 63, Affiliated with the International Brotherhood of Teamsters, Chauffeurs and Warehousemen of America, Defendant–Appellant.**

No. 87–5923.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1988.

Decided June 22, 1988.

---

Michael J. Shelley, Wohlner, Kaplon, Phillips, Vogel, Shelley & Young, Los Angeles, Cal., for defendant-appellant.

Ronald W. Novotny, Hill, Farrer & Burrill, Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE, TANG and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Local 63 of the Teamsters Union appeals the district court's judgment permanently enjoining it from arbitrating a grievance pursuant to a collective bargaining agreement with appellee LAWI/CSA Consolidators, Inc. ("Consolidators"). The principal questions we consider are whether the court or the arbitrator should decide whether the duty to arbitrate a grievance had terminated, and, if the district court properly assumed responsibility for deciding the arbitrability issue, whether it erred in finding that the duty to arbitrate had lapsed.

I

For nearly thirty years, Local 63 and Consolidators were parties to a collective bargaining agreement covering the terms and conditions of employment of dock workers employed by Consolidators at its trucking terminal in Vernon, California. Their final agreement, the one at issue here, was composed of the 1982–85 Teamsters National Master Freight Agreement and the 1982–85 Western States Area Pickup and Delivery Local Cartage and Dock Workers Supplemental Agreement, with certain modifications. The agreement provided that it would remain in effect through March 1985 unless either party served written notice of its desire to terminate the agreement at least 60 days prior to its expiration date. Consolidators gave timely written notice of its intent to terminate the contract and requested negotiations for a new one.

In October 1985, representatives of the parties met to negotiate a new contract. Consolidators proposed a variety of changes to the expired agreement, including a substantial wage reduction. Local 63 refused to accept any of the proposals and instead requested Consolidators to adopt the new National Master Freight Agreement. The parties met a second time on December 11, 1985. Consolidators again proposed significant concessions, which Local 63 again refused, proposing instead that Consolidators agree to the new Master Agreement. At the end of the meeting, Consolidators informed Local 63 that, because of its bleak financial situation, it was considering closing its dock operations and laying off its dock employees. On December 16, the union membership voted to reject Consolidators' proposed concessions.

On December 20, 1985, Consolidators' executive vice president, John Lincoln, wrote

to Local 63's representative, Frank Manuri, stating that an impasse in the negotiations had been reached, that Consolidators intended to terminate its dock operations, and that it was willing to negotiate concerning the termination and its effects on the employees. Upon receiving the letter the same day, Manuri called Lincoln to say that although Local 63 still adhered to its proposal of the new National Master Freight Agreement, it remained willing to negotiate. Lincoln wrote to Manuri on December 23, again saying that negotiations over a new contract would be futile, that Consolidators would close its dock operations effective January 1, 1986, and that Consolidators would meet with Local 63 on January 3 to negotiate the effects of the closure. On December 30, Manuri sent Lincoln a telegram advising him that Local 63 believed that an impasse had not been reached in bargaining over a new collective bargaining agreement. On January 1, Consolidators closed its dock operations and laid off its dock employees.

The parties met on January 3, 17, and 28, 1986 and discussed a new agreement to cover dock operations at the Vernon plant, should they be resumed. At these meetings Local 63 continued to insist on the Master Agreement, and Consolidators continued to insist on substantial concessions.

On January 13, 1986, Local 63 filed a grievance challenging the January 1 closure of the dock operations as a violation of the collective bargaining agreement. Consolidators objected to submission of the grievance to arbitration on the ground that the contractual duty to arbitrate expired when the parties bargained to impasse on

December 20, and in due course filed this suit seeking to enjoin arbitration.

The arbitration clause of the collective bargaining agreement (Article 8, Section 2 of the National Master Freight Agreement) provides that the duty to arbitrate "shall continue to apply during that period of time between the expiration of this Agreement and the conclusion of negotiations...." The district court ruled that negotiations had concluded on December 20, 1985, because on that date an impasse had been reached. Accordingly, the court ruled that Consolidators' contractual duty to arbitrate had lapsed before the January 1 closure of the dock operations that was the basis of the grievance. The court permanently enjoined arbitration of the grievance, and Local 63 appeals.

## II

■ Local 63 argues that the district court should not have decided the arbitrability of the grievance, but should have left that question to the arbitrator.[1]

The first principle of the law of labor arbitration is that arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). The second principle, which follows from the first, "is that the question of arbitrability—whether a collective bargaining-agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT & T Technologies, Inc. v. Communications Workers,*

---

1. Local 63 raises a threshold argument that the district court lacked jurisdiction to determine whether the parties had bargained to impasse because that determination is within the primary jurisdiction of the NLRB. This contention is disposed of easily. Courts have jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, over alleged violations of collective bargaining agreements even though the conduct at issue may also constitute an unfair labor practice subject to the authority of the NLRB. *William E. Arnold Co. v. Carpenters District Council,* 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974); *Smith v.*

*Evening News Ass'n,* 371 U.S. 195, 197–99, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *International Bhd. of Elec. Workers, Local 532 v. Brink Construction Co.,* 825 F.2d 207, 212 (9th Cir.1987). In these matters, courts and the NLRB share concurrent jurisdiction. *George Day Constr. Co. v. United Bhd. of Carpenters, Local 354,* 722 F.2d 1471, 1481 (9th Cir.1984). Because this action concerns an alleged breach of an arbitration clause of a collective bargaining agreement, it falls squarely within the scope of section 301. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 449–56, 77 S.Ct. 912, 913–17, 1 L.Ed.2d 972 (1957).

475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *see also Warrior & Gulf Navigation Co.,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53. Thus, as we have recently observed, "[g]enerally ..., courts not arbitrators decide whether there is an agreement to arbitrate a dispute." *Brotherhood of Teamsters Local # 70 v. Interstate Distributor Co.,* 832 F.2d 507, 509 (9th Cir.1987) [hereinafter *Local 70*]. The reason for this rule is that "[t]he duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964).

The parties are, of course, free to provide in the collective bargaining agreement that questions of arbitrability will be decided by the arbitrator rather than by the court, but they must do so "clearly and unmistakably." *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418. *See generally* F. Elkouri & E. Elkouri, *How Arbitration Works* 215 (4th ed. 1985) ("Under the federal law the question of substantive arbitrability is for the court when asked to stay or compel arbitration, unless the arbitration clause clearly specifies that the arbitrator shall make the determination"). Courts refer the question of arbitrability to the arbitrator "only if [the parties] leave no doubt that such was their intent." *Local 70,* 832 F.2d at 510. *Local 70* is an example of a case in which the parties left no such doubt. The collective bargaining agreement contained a clause providing for automatic annual renewal of the contract unless a party gave timely written notice. At issue was whether an exchange of letters between the employer and union constituted effective notice under that clause. *Id.* at 509. In holding that this issue should be decided by the arbitrator not the court, we noted that the arbitration clause —providing for arbitration of "[a]ny grievance or controversy affecting the mutual relations of the Employer and the Union"— was "even broader than the ordinary 'broad arbitration clause.'" *Id.* at 510 n. 2. Because the dispute over the effect of the exchange of letters required interpretation of the termination clause, we held that "the general rule [that courts decide the question of arbitrability] is simply inapplicable." *Id.* at 511.

In the present case, the general rule is applicable. Here, unlike in *Local 70,* we have an arbitration clause that does not "clearly and unmistakably" leave questions of arbitrability for determination by the arbitrator. *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418. Moreover, the parties agree that the question whether the duty to arbitrate terminated before Consolidators closed its dock operations on January 1 turns on whether they had bargained to impasse by December 20. They do not argue the issue of impasse as one of contract interpretation—indeed, the word impasse does not even appear in the contract—but rather as an issue to be decided in light of court and NLRB decisions defining impasse as a term of art in labor law. In the absence of any indication that the parties "clearly and unmistakably" intended the arbitrator to decide the impasse question, we follow "the general rule that courts must decide the question" of arbitrability. *Local 70,* 832 F.2d at 510; *see also Francesco's B., Inc. v. Hotel and Restaurant Employees Union, Local 28,* 659 F.2d 1383, 1387–88 (9th Cir.1981). Accordingly, the district court did not err in deciding the question of arbitrability.

### III

Local 63 contends that even if arbitrability was a question for the district court to decide, the court erred in determining that the parties had bargained to impasse before the grievance arose.

The parties disagree about the appropriate standard for appellate review of the question whether impasse was reached. Local 63 contends that it is principally a legal issue that should be reviewed de novo; Consolidators contends that it is principally a factual determination subject to the clear error standard. We agree with Consolidators that whether a bargaining impasse has been reached is essentially a factual question. *See* C. Morris, *The De-*

**1240**

*veloping Labor Law* 635 (2d ed. 1983). Because "the applicable legal standard provides for a strictly factual test," the clearly erroneous standard governs our review. *See United States v. McConney,* 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Relevant factors in determining whether an impasse has been reached include the number and length of the negotiating sessions, how long the parties persisted in refusing to modify their bargaining positions, the importance of the issues as to which they disagreed, whether the negotiators' refusal to modify their positions occurred only at the last meeting or persisted over the course of several meetings, and whether either party indicated a willingness to bargain further. *Taft Broadcasting Co.,* 163 NLRB 475 (1967), *enforced sub nom. American Federation of Television and Radio Artists v. NLRB,* 395 F.2d 622 (D.C.Cir.1968); *see generally* R. Gorman, *Basic Text on Labor Law* 448–49 (1976).[2]

In support of its contention that an impasse had not been reached prior to January 1, Local 63 relies largely on the fact that the parties negotiated on three occasions in January over the effect on the workers of the closing of the dock and the possible reopening of dock operations under a new collective bargaining agreement. Local 63 characterizes these meetings as a continuation of the December negotiations and argues that their continuation proves that the parties did not believe that negotiations had reached an impasse. Consolidators counters that the January negotiations were entirely separate in that they concerned what would have been a new collective bargaining relationship had Consolidators decided to reinstitute dock operations.

In finding that the parties had reached an impasse, the district court relied mainly on the fact that in both of the two bargaining sessions in December Consolidators suggested substantial economic concessions to which Local 63 flatly refused to agree. The court concluded that Consolidators' letter to Local 63 in which it stated that an impasse had been reached reflected its genuine belief that further negotiations would be futile. The court found that the January negotiations did not indicate that an impasse concerning the old collective bargaining relationship had not been reached, but rather that the parties were negotiating concerning a possible resumption of a relationship, as well as the effects of the closure. The court also found that the fact that the parties did not change their positions in the January negotiations further showed that an impasse had been reached in December.

The district court's finding that an impasse had been reached does not leave us "with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1510, 84 L.Ed.2d 518 (1985) (the clearly erroneous standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently"). By December 20, although the parties had met only twice, they obviously were far apart on a host of key issues, including wages, working hours, fringe benefits, arbitration procedures, and work classifications. Although the union professed willingness to continue negotiations, it did not manifest a corresponding willingness to yield on its bargaining demands. Consolidators, on the other hand, adamantly insisted on major economic concessions, which the union

**2.** Ordinarily, the question whether parties have bargained to impasse arises in the context of an unfair labor practice proceeding in which the union charges that an employer has violated its bargaining duty under section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), by unilaterally changing the terms and conditions of employment after the expiration of a collective bargaining agreement without first bargaining in good faith to an impasse. *See, e.g., Cuyamaca Meats, Inc. v. San Diego and Imperial Counties Butchers' Pension Trust Fund,* 827 F.2d 491, 496 (9th Cir.1987).

membership voted down. Neither party offered to back down.

That the parties met in January and discussed the same questions that had been discussed in December, could, as Local 63 contends, support an inference that the negotiations had not really concluded in December. But that is not the only inference that the trier of fact could draw. Negotiations may continue even after a deadlock has been reached. *Financial Institution Employees, Local No. 1182 v. NLRB*, 738 F.2d 1038, 1042–43 (9th Cir.1984) (impasse reached when union rejected what employer designated its final offer, even though negotiations on some issues continued for five more months); *American Federation of Television and Radio Artists v. NLRB*, 395 F.2d 622, 628 (D.C.Cir.1968) ("some bargaining may go on even in the presence of deadlock").

 A bargaining impasse occurs when the parties "could well conclude that 'there was no realistic prospect that continuation of discussion at that time would have been fruitful.'" *H & D, Inc. v. NLRB*, 665 F.2d 257, 259 (9th Cir.1980) (quoting *NLRB v. Independent Ass'n of Steel Fabricators*, 582 F.2d 135, 147 (2d Cir.1978), *cert. denied*, 439 U.S. 1130, 99 S.Ct. 1049, 59 L.Ed. 2d 91 (1979)), *vacated on other grounds*, 455 U.S. 902, 102 S.Ct. 1243, 71 L.Ed.2d 440, *opinion on remand*, 670 F.2d 120 (1982). In light of the disparity between the parties' positions on major issues and their adamant refusal to propose any compromises, the district court could reasonably infer that further discussions in December would indeed have been fruitless. *Id.* at 260 (impasse reached, notwithstanding union's expressed desire to continue negotiations, because neither party indicated it would modify its bargaining de-

mands). In sum, we conclude that the district court's finding that the parties had reached an impasse was not clearly erroneous.[3]

Accordingly, the judgment of the district court is AFFIRMED.

---

**3.** Finally, Local 63 contends that declaratory and injunctive relief were inappropriate in this case because Consolidators did not show that further arbitration would have caused irreparable harm or that there was no adequate remedy at law. Consolidators was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate. *See George Day Const. Co., Inc.*, 722 F.2d at 1476 (employer may seek declaratory and injunctive relief barring arbitration of grievance after expi-

ration of contractual duty to arbitrate); *O'Connor Co. v. Carpenters Local Union No. 1408*, 702 F.2d 824, 825 (9th Cir.1983) (affirming declaratory judgment that employer not required to arbitrate grievance that arose after expiration of collective bargaining agreement); *cf. W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983) (discussing availability of injunctive and declaratory relief barring arbitration).