**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEE AND MOVING PICTURE TECHNICIANS, ARTISTS, AND ALLIED CRAFTS OF THE UNITED STATES, IT'S TRUSTEED LOCAL 720 LAS VEGAS, NEVADA, AKA IATSE Local 720, *Plaintiff-Appellee*, | No. 12-17200 D.C. No. 2:12-cv-00181-GMN-PAL OPINION |
| v. | |
| INSYNC SHOW PRODUCTIONS, INC., *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, Chief District Judge, Presiding

Argued and Submitted
December 11, 2014—San Francisco, California

Filed September 4, 2015

Before: A. Wallace Tashima and Richard A. Paez, Circuit
Judges, and Frederic Block, Senior District Judge.[*]

Opinion by Judge Paez

---

[*] The Honorable Frederic Block, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Labor Law / Arbitration

The panel affirmed the district court's order granting a petition to compel arbitration under a collective bargaining agreement between a union and an employer.

The district court granted the union's petition and "stayed" the case. The panel concluded that the district court's arbitration order was final under 28 U.S.C. § 1291 because the stay lacked any legal or practical effect under either the Labor Management Relations Act or the Federal Arbitration Act. The panel therefore exercised jurisdiction to review the district court's order.

Affirming the district court's order compelling arbitration, the panel held that it was for the arbitrator to decide whether the parties' collective bargaining agreement had expired when the union sought to invoke the agreement's grievance and arbitration procedure, or whether, pursuant to an "evergreen clause," the agreement continued in effect.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Bryan J. Cohen (argued) and Gregory J. Kamer, Kamer Zucker Abbott, Las Vegas, Nevada, for Defendant-Appellant.

David A. Rosenfeld (argued) and William A. Sokol, Weinberg Roger & Rosenfeld, Alameda, California; Kristina L. Hillman, Weinberg, Roger & Rosenfeld, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

PAEZ, Circuit Judge:

This appeal presents two issues arising from a petition to compel arbitration under a collective bargaining agreement between the International Alliance of Theatrical Stage Employees and Moving Picture Technicians, Artists, and Allied Crafts of the United States, its Territories and Canada and its Trusteed Local 720 Las Vegas, Nevada ("IATSE") and InSync Show Productions, Inc. ("InSync").  It is undisputed that IATSE and InSync agreed to a collective bargaining agreement containing both a grievance and arbitration procedure and a provision governing the length of the agreement's life.  After the parties unsuccessfully negotiated regarding a potential successor agreement, IATSE filed a petition to compel arbitration in federal court.  The district court granted IATSE's petition to compel arbitration pursuant to the parties' initial agreement and "stayed" the case.  We must decide whether we have jurisdiction over InSync's appeal from the order compelling arbitration and, if so, whether the district court properly compelled arbitration. We conclude that the district court's arbitration order was

final under 28 U.S.C. § 1291 because the stay lacked any legal or practical effect. We therefore exercise jurisdiction to review the order compelling arbitration, and we affirm.

## I.  Background

InSync and IATSE entered into a collective bargaining agreement (the "2003–2007 CBA") in January 2003. Article 26 of the 2003–2007 CBA, which governs the term of the agreement, contains an "evergreen clause." Article 26 stated:

> Except as otherwise provided for herein, this Agreement shall become effective on the 1st day of January, 2003 and shall continue in full force and effect to and including December 31st, 2007 *and from year to year thereafter.* The Employer agrees to live by the applicable wages, terms and conditions for additional projects in the future.

(emphasis added).

Article 15 of the 2003–2007 CBA includes a grievance and arbitration procedure. That provision defines "a grievance . . . as a claim or allegation by an employee in the bargaining unit or by the Union that the Employer has violated or is violating the provisions of this Agreement." If the parties proceed to arbitration, "[t]he arbitrator's award shall be based solely upon his interpretation of the meaning or application of the provisions of this Agreement."

On October 2, 2007, IATSE informed InSync that IATSE was interested in changing the terms of the 2003–2007 CBA. InSync responded on November 10 with a letter, explaining

"that InSync did not intend to renew the [2003–2007 CBA]." IATSE wrote back on November 15, stating that the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, required the parties to bargain in good faith. IATSE included a proposed "Extension Agreement," the "2008–2012 CBA," that InSync indicated would "extend the terms of the 2003–2007 [CBA]." InSync did not sign the 2008–2012 CBA. On December 21, 2007, IATSE reminded InSync of the requirement to bargain in good faith. The record does not reflect further communication until August 2008.

Between August 22, 2008 and February 11, 2009, InSync and IATSE corresponded about a possible successor collective bargaining agreement. On February 11, 2009, InSync wrote to IATSE, stating that "the parties had reached impasse in bargaining and InSync reserved the right to implement any or all of the terms and conditions set forth in the Company's [previously sent] December 10, 2008, proposal." Shortly thereafter, on February 20, 2009, InSync sent and invited a response to its "last, best and final offer." On March 17 and 18, IATSE sent a counterproposal, and InSync reiterated its position without accepting that counterproposal. The parties did not reach an agreement.

On August 2, 2011, IATSE invoked the parties' grievance and arbitration procedure and requested a meeting. Two weeks later, InSync responded that the "parties had bargained to impasse between 2007 and 2009, no extension agreement had been signed, and the statute of limitations under Section 10(b) of the [NLRA] barred any legal actions based on the negotiations during 2007–2009."

On September 30, 2011, IATSE wrote to InSync, asserting its position that InSync was bound by provisions in

the 2003–2007 CBA that rendered the proposed 2008–2012 CBA effective. The 2008–2012 CBA had terms "identical" to those in the 2003–2007 CBA. On October 10, InSync informed IATSE that it believed that "a refusal to bargain charge under Section 8(a)(5) [of the NLRA] was time barred, and a grievance under Article 15 of the collective bargaining agreement was also time barred." On October 24, IATSE responded with a letter, stating that the letter "serve[d] as the Union's grievance filed pursuant to Article 15, because the Employer is violating each and every section of the Collective Bargaining Agreement . . . insofar as the Employer is operating on a completely non-union basis and ignoring the contract completely." InSync responded on November 2, reiterating its views on timeliness, and concluding: "The best I can tell you is do what you have to do."

On February 2, 2012, IATSE filed a petition to compel arbitration in the district court. IATSE argued that the 2008–2012 CBA, with terms identical to those in the 2003–2007 CBA, was enforceable as a result of the 2003–2007 CBA's evergreen clause. InSync responded by filing a motion to dismiss, or, alternatively, for summary judgment, on grounds that the NLRA preempted IATSE's action and that the district court lacked jurisdiction.

The district court rejected IATSE's position that the 2008–2012 CBA "binds the parties," reasoning that such a position "apparently read out the portion of the Evergreen Clause that states that the [2003–2007] CBA would continue in effect 'from year to year' after its expiration, not in block chunks of four-year periods." Instead, the court considered the text of the 2003–2007 CBA and declined to "reach the merits of [InSync's] argument [that InSync had cancelled the 2003–2007 CBA's evergreen clause]." The court took no

position on the merits of InSync's argument and "decide[d] that because [the] argument requires interpretation of the [2003–2007] CBA and a determination of whether it was cancelled, the argument is better left for an arbitrator to decide pursuant to the arbitration clause and [IATSE]'s grievance process."  The court granted IATSE's petition to compel arbitration, denied InSync's motion, and ordered "that this case shall be STAYED pending the completion of arbitration."

## II.  Jurisdiction

### A.

We turn first to whether we have jurisdiction to entertain InSync's appeal.  IATSE argues that appellate jurisdiction does not exist because the district court's order compelling arbitration and staying the case did not constitute a final order under 28 U.S.C. § 1291.  As we explain below, we conclude that we have jurisdiction and that we may address the merits of InSync's appeal.

"Federal courts 'have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.'"  *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  Generally, this court "ha[s] jurisdiction of appeals from all final decisions of the district courts of the United States[.]"  28 U.S.C. § 1291.  "Appeal gives the upper court a power of review, not one of intervention.  So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).

Under *Goodall-Sanford v. United Textile Workers of America, A.F.L. Local 1802*, 353 U.S. 550 (1957), we have jurisdiction over InSync's appeal of the order compelling arbitration. In *Goodall-Sanford*, a union brought a suit in federal district court under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and sought to "compel specific performance of a grievance arbitration provision of a collective bargaining agreement." *Goodall-Sanford*, 353 U.S. at 550–51. The union sought no other relief. *See id.* The district court ordered arbitration, and on appeal, the First Circuit affirmed. *Id.* at 551. Subsequently, the Supreme Court also affirmed. *Id.* In affirming, the Court held that appellate jurisdiction existed, explaining that "[a]rbitration [wa]s not merely a step in judicial enforcement of a claim nor auxiliary to a main proceeding, but the full relief sought." *Id.* "A decree under § 301(a) ordering enforcement of an arbitration provision in a collective bargaining agreement is, therefore, a 'final decision' within the meaning of 28 U.S.C. § 1291." *Id.* at 551–52.

We have held that *Goodall-Sanford* permits review of appeals from orders compelling arbitration as the "full relief sought" in § 301 cases. *See United Food & Commercial Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179 & 1532 v. Alpha Beta Co.*, 736 F.2d 1371, 1373 & n.3 (9th Cir. 1984) (citing *Goodall-Sanford* and stating: "Because the district court's granting of a petition to compel arbitration under a collective bargaining agreement is a final decision under 28 U.S.C. § 1291 . . . we have jurisdiction over this appeal"); *see also Abernathy v. S. Cal. Edison*, 885 F.2d 525, 528 n.13 (9th Cir. 1989) (noting that the immediate appealability of orders compelling arbitration under *Goodall-Sanford* "is inconsistent with the policies

underlying the arbitration process[,]" but explaining that "until the Supreme Court or Congress acts, the final judgment cases require such an outcome").[1]

Here, the district court reviewed the relevant evergreen and arbitration provisions, determined that interpretation of the evergreen clause in the 2003–2007 CBA should be decided by an arbitrator, and entered an order compelling arbitration. Notably, the only claim that IATSE alleged in its petition was that it was entitled to enforcement of the grievance and arbitration procedure in the 2008–2012 CBA (with terms identical to those in the 2003–2007 CBA). Thus, in ordering arbitration, the district court granted the full relief IATSE sought, *see Goodall-Sanford*, 353 U.S. at 551–52, and thereby terminated the litigation. As part of the order, the court "stayed" the case pending arbitration, but the court did not explain why it ordered the stay nor specify on what basis it did so. The entry of the stay, in these circumstances, had no legal or practical effect. Thus, under *Goodall-Sanford*, we have jurisdiction over InSync's appeal of the order compelling arbitration.

## B.

IATSE also invoked the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, as a statutory basis for its petition to compel arbitration. IATSE argues that the FAA applies to the parties' collective bargaining agreement and precludes appellate jurisdiction because the district court "stayed" this

---

[1] Other circuits confronted with similar facts have reached the same conclusion. *See, e.g.*, *Oil, Chem., & Atomic Workers Int'l Union (AFL-CIO), Local 5-857, Labor Orgs. v. Conoco, Inc.*, 241 F.3d 1299, 1302 (10th Cir. 2001) (citing cases from the Second, Third, and Sixth Circuits).

case pending arbitration. *See* 9 U.S.C. §§ 3, 16(b)(1).**[2]** Under the FAA, generally, "an appeal may not be taken from an interlocutory order—(1) granting a stay of any action under section 3 of this title; . . . ."  9 U.S.C. § 16(b)(1).  And under 9 U.S.C. § 3, the district court in any proceeding where an issue is referable to arbitration under a written agreement "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."

We need not decide, however, whether the FAA applies in this case because we have jurisdiction to review the order compelling arbitration whether we apply the FAA, or the LMRA as interpreted by *Goodall-Sanford*.**[3]**  Even reviewing

---

**[2]** The district court did not specify under what authority it issued the stay.  *Compare* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action . . . .") *with Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (noting that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

**[3]** The Tenth Circuit recently held that the FAA could apply to an arbitration clause in a collective bargaining agreement.  *See Int'l Bhd. of Elec. Workers, Local # 111 v. Pub. Serv. Co. of Colo.*, 773 F.3d 1100, 1105–07 (10th Cir. 2014).  *Cf. Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1115 n.7 (9th Cir. 2012) (assuming "[f]or purposes of . . . discussion" that the FAA would apply "to arbitration of collective bargaining agreements"); *PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 n.1 (9th Cir. 2004) ("*Circuit City* [*Stores, Inc. v. Adams*, 532 U.S. 105 (2001),] did not address a CBA, and we have not considered . . . its application to such agreements.").

this case (and the district court's stay) as strictly a § 301 case, we properly could look to the FAA for guidance. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 41 n.9 (1987) ("[F]ederal courts have often looked to the [FAA] for guidance in labor arbitration cases, especially in the wake of the holding that § 301 . . . empowers the federal courts to fashion rules of federal common law . . . .").

Whether we apply the FAA or look to it for guidance, we would reach the same result as applying the LMRA and *Goodall-Sanford* because the petition to compel arbitration was the only matter before the district court. *See Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1302 (9th Cir. 1994). Under 9 U.S.C. § 16(a)(3), an "appeal may be taken from . . . a final decision with respect to an arbitration that is subject to this title."

The Supreme Court interpreted the phrase, "final decision with respect to an arbitration," in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 86–87 (2000). "[T]he term 'final decision' in § 16(a)(3) has the longstanding meaning of a decision that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004) (quoting *Green Tree*, 531 U.S. at 86). In *Green Tree*, a plaintiff initially had alleged statutory claims against a lender, after which the lender brought a motion to compel arbitration as provided in the parties' written agreement and to dismiss the plaintiff's claims with prejudice. 531 U.S. at 83–84. Until that point, the federal courts had distinguished "independent" proceedings (when "a request to order arbitration is the sole issue before the court") from "embedded" proceedings ("actions involving both a request for arbitration and other claims for relief") to

determine whether a "final decision" arose under § 16(a)(3). *Id.* at 87. The Supreme Court rejected this distinction as one at odds with the plain text in § 16(a)(3). *See id.* at 88–89. *Green Tree* ultimately held that "where . . . the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Id.* at 89. Separately, in a footnote, the Court noted a distinction not at issue in *Green Tree*: "Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable." *Id.* at 87 n.2 (citing 9 U.S.C. § 16(b)(1)).

When the only matter before a district court is a petition to compel arbitration and the district court grants the petition, appellate jurisdiction may attach regardless of whether the district court issues a stay. *See Lai*, 42 F.3d at 1302. The limitation on appellate jurisdiction noted in *Green Tree*'s footnote 2 does not apply here because in *Green Tree*, the lender moved to compel arbitration where the plaintiff had alleged substantive claims for relief in her complaint. *See Green Tree*, 531 U.S. at 83. Before the Supreme Court decided *Green Tree*, we had held that: "if the motion to compel arbitration in a given case is the only claim before the district court, a decision to compel arbitration is deemed to dispose of the entire case, and permit appellate review under 9 U.S.C. § 16(a)(3)." *Lai*, 42 F.3d at 1302.[4] *Green Tree* does

---

[4] *See also Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir. 2003) ("Yet we have suggested . . . that if *all* the judge is retaining jurisdiction for is to allow the arbitrator's award to be confirmed without need for the filing of a separate lawsuit, the order to arbitrate is final (final enough might be the better way to put it) and therefore immediately appealable."); *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1197–98 (8th Cir. 2008) (citing approvingly to *Lai*, and concluding

not disturb our holding in *Lai*, and it remains good law today. *See Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 (9th Cir. 2003); *Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co.*, 249 F.3d 1177, 1179 (9th Cir. 2001).[5]

## C.

In sum, following case law under the LMRA or FAA leads to the same result: a district court presented with a petition to compel arbitration and no other claims cannot prevent appellate review of an order compelling arbitration by issuing a stay. Thus, the order compelling arbitration in this case is a final decision over which we have jurisdiction. *See* 28 U.S.C. § 1291.

Because the district court's order compelling arbitration is final within the meaning of 28 U.S.C. § 1291, we have jurisdiction over this appeal, and we need not address InSync's alternative theories for jurisdiction under *Moses H.*

---

that "when a motion to compel arbitration and a motion for a stay are brought [in separate district courts in different circuits], they should be treated individually and the resulting order compelling arbitration is final and appealable").

[5] Similarly, in *Dees v. Billy*, 394 F.3d 1290 (9th Cir. 2005), we distinguished a Fifth Circuit case by explaining: "While the plaintiff in [the Fifth Circuit case] sought only to obtain an order compelling arbitration, Dees initiated this suit to recover damages for medical malpractice, and that claim—although currently stayed—remains before the trial court." *Id.* at 1293 (citing *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702 (5th Cir. 2002)). Although *Dees* "h[eld] that a district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing," *id.* at 1294, it distinguished a case that solely involved a claim to compel arbitration in a district court, *id.* at 1292. That distinction is consistent with *Lai*.

*Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), or the collateral order doctrine.[6]

## III.  Order Compelling Arbitration

### A.

Having determined that we may exercise jurisdiction over this appeal, we turn to the merits.  We review de novo the district court's order compelling arbitration.  *Bushley*, 360 F.3d at 1152.

We begin by recognizing some established principles regarding arbitration of disputes under a collective bargaining agreement.  First, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav.*

---

[6] Separately, InSync argues that the district court lacked jurisdiction in this case because IATSE alleged claims within the exclusive jurisdiction of the National Labor Relations Board.  We disagree.  "Claims brought under Section 301(a) of the LMRA may be heard in federal court even if they allege conduct that is arguably an unfair labor practice."  *Int'l Bhd. of Teamsters, Office Food & Warehouse Local 952 v. Am. Delivery Serv. Co.*, 50 F.3d 770, 773–74 (9th Cir. 1995).  "Section 301(a) of the LMRA 'carves out a broad exception to the [National Labor Relations Board]'s primary jurisdiction for claims arising out of collective bargaining agreements, whether or not such claims would also be an unfair labor practice . . . .'"  *Id.* at 774 (citation omitted).  IATSE claimed that InSync violated the parties' collective bargaining agreement and invoked § 301 of the LMRA as authority for the petition to compel arbitration under the agreement.  The district court had jurisdiction over that proceeding.  *See LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1238 n.1 (9th Cir. 1988).

*Co.*, 363 U.S. 574, 582 (1960)); *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200–01 (1991). And "except where 'the parties clearly and unmistakably provide otherwise,' it is 'the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning' a particular matter." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (citation omitted) (quoting *AT & T Techs.*, 475 U.S. at 649, 651). Further,

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Techs.*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582–83).

*Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*, 832 F.2d 507 (9th Cir. 1987), governs our approach to InSync's appeal. *Interstate Distributor* explained how to approach a case in which the parties to a collective bargaining agreement disagree about "the proper meaning or interpretation of [a] termination clause[ in their agreement,]" and whether an arbitrator "should decide that question[.]" *Id.* at 510. There, the parties "agree[d] that they entered into an agreement containing an arbitration clause," did not dispute "the scope of the arbitration clause," and "point[ed] to no language purporting

to exclude termination disputes from the scope of the arbitration clause, nor to any ambiguity or uncertainty in that clause." *Id.* at 510–11. *Interstate Distributor* held "that where a dispute exists over whether a contract with an arbitration clause has expired or been terminated, the proper initial inquiry for the court is whether the arbitration clause covers such disputes, not whether the termination clause means what [either party] says it means." *Id.* at 511. In such a case, "the real question [about the termination clause's meaning or interpretation] is one step removed from the issue of substantive arbitrability discussed in *AT & T Technologies*." *Id.* at 510.

Here, Article 26 of the 2003–2007 CBA sets out the term of the agreement and includes the evergreen clause, providing, in part, that the 2003–2007 CBA "shall continue in full force and effect to and including December 31st, 2007 *and from year to year thereafter*." (emphasis added). IATSE's claims that InSync violated provisions of the 2003–2007 CBA require interpretation of the evergreen clause to determine whether the CBA was enforceable between the parties. And InSync does not argue that, under the 2003–2007 CBA, interpreting the evergreen clause falls outside the scope of the arbitration provision. *See Interstate Distrib.*, 832 F.2d at 510–11. Thus, this case is analogous to *Interstate Distributor*.

## B.

The 2003–2007 CBA arbitration provision is similar in scope to the arbitration agreements in *Interstate Distributor* and *Camping Construction Co. v. District Council of Iron Workers*, 915 F.2d 1333 (9th Cir. 1990). Moreover, the provision covers a dispute between IATSE and InSync—

whether the CBA has expired or been terminated—that must be decided before addressing the parties' underlying dispute. *See Interstate Distrib.*, 832 F.2d at 511; *Camping*, 915 F.2d at 1338.

*Camping* applied *Interstate Distributor*'s rule that "'when the collective bargaining agreement contains a customary arbitration clause acts of repudiation and other acts of termination must be submitted to arbitration.'" *Camping*, 915 F.2d at 1338 (quoting *Interstate Distrib.*, 832 F.2d at 511 n.4). *Camping* guides our determination of whether the 2003–2007 CBA arbitration provision was "of the type referred to in *Interstate Distributor*." *Id.* If the provision is similar in scope to that of *Interstate Distributor*, then "the dispute is arbitrable, and the arbitrator rather than the court must examine the facts, construe the termination provision of the contract, and decide whether the contract has in fact been terminated." *Id.*

The 2003–2007 CBA arbitration provision's text is similar in scope to that of *Interstate Distributor* and *Camping*. In *Camping*, we explained that "an agreement to arbitrate '*any differences that may arise regarding the meaning and enforcement of this Agreement*,' or any other broad arbitration clause, such as 'any dispute arising out of this Agreement,' ordinarily requires us to hold that the parties have provided for arbitration of disputes regarding termination[.]" *Id.* at 1338–39 (emphasis added) (footnote omitted); *see also McKinney v. Emery Air Freight Corp.*, 954 F.2d 590, 593 (9th Cir. 1992) (applying *Interstate Distrib.* and *Camping* to an agreement covering "[a]ny grievance or controversy affecting the mutual relations of the Employer and the Union" and holding that a dispute over whether a labor contract continued to exist after merger was subject to arbitration). And here,

the 2003–2007 CBA arbitration provision applies to "a claim or allegation by an employee in the bargaining unit or by the Union that the Employer has violated or is violating the provisions of th[e] Agreement." "The arbitrator's award shall be based solely upon his interpretation of the meaning or application of the provisions of this Agreement." The arbitration provision does not except any particular type of claim or allegation. *See Interstate Distrib.*, 832 F.2d at 510–11.

Further, *Camping* explained that the *Interstate Distributor* rule "applies whether the dispute between the parties is solely over termination or repudiation, or whether, as [in *Camping*], their disagreement over that question is a threshold issue that must be resolved before the underlying dispute can be reached." *Camping*, 915 F.2d at 1338. And claims or allegations, like IATSE's here, that InSync violated provisions of the 2003–2007 CBA require, as "a threshold" determination, the interpretation of the CBA's Article 26 to determine whether the CBA was enforceable between the parties. *See id.* Thus, the parties' dispute falls within the scope of the 2003–2007 CBA arbitration provision and is subject to arbitration.[7]

---

[7] Because the scope of the arbitration provision broadly covers claims or allegations of employer violations of the agreement, this case is not one in which the arbitration provision's scope is too narrow to "'clearly and unmistakably' leave questions of arbitrability for determination by the arbitrator," *LAWI/CSA Consolidators*, 849 F.2d at 1239 (quoting *AT & T Techs.*, 475 U.S. at 649). Nor is it one in which an arbitration provision limits "arbitrable disputes to those involving 'application of' the [parties' agreement]," and in which resolving a dispute "does not require the interpretation or construction, i.e., 'application', of any substantive provisions of the [parties' agreement]," *N. Cal. Newspaper Guild Local 52 v. Sacramento Union*, 856 F.2d 1381, 1383 (9th Cir. 1988).

InSync's argument that *Litton*, 501 U.S. 190, compels reversal is unavailing. Indeed, that case is inapposite. *Litton* involved "whether a dispute over layoffs which occurred *well after expiration* of a collective-bargaining agreement must be said to arise under the agreement *despite its expiration*." *Id.* at 193 (emphases added). There, the parties did not dispute that the agreement had expired. *See id.* at 193, 200–01. In fact, the Supreme Court acknowledged that "a collective-bargaining agreement might be drafted so as to eliminate any hiatus between expiration of the old and execution of the new agreement, or to remain in effect until the parties bargain to impasse." *Id.* at 201 (footnote omitted). *Litton* is inapplicable when the parties dispute the effect of an evergreen clause in their collective bargaining agreement on the issue of whether the agreement has expired or been terminated. Whether the 2003–2007 CBA has expired or been terminated, therefore, is for an arbitrator, not the court, to decide.[8]

In effect, what InSync urges this court to decide—whether the 2003–2007 CBA had expired when IATSE sought to invoke the grievance and arbitration procedure—is for an arbitrator. In attempting to distinguish *Interstate*

---

[8] InSync also argues that IATSE "repudiated the 2003–2007 CBA" in proceedings before the district court and should be "estopped from asserting that [the 2003–2007 CBA] is still in effect . . . ." But InSync did not raise this estoppel issue before the district court. And the circumstances do not justify exercising our discretion to address it for the first time on appeal as an issue of law. *See A-1 Ambulance Serv., Inc. v. Cnty. of Monterey*, 90 F.3d 333, 338–39 (9th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (July 31, 1996); *Local Union No. 370 of Int'l Union of Operating Eng'rs v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir. 1986) (per curiam). Thus, InSync has waived this issue and we decline to address it.

*Distributor* and *Camping*, InSync argues that the 2003–2007 CBA had expired and that the parties reached impasse in "attempting to negotiate the terms of a successor agreement." But "once it is found that a contract did exist at some time, the questions of whether that contract has expired, or has been terminated or repudiated, may well present arbitrable issues, depending on the language of the agreed-upon arbitration clause." *Camping*, 915 F.2d at 1340.[9] Article 26 of the 2003–2007 CBA contains an evergreen clause. Given the scope of the arbitration provision and the nature of the parties' dispute, as previously discussed, the arbitrator and not the district court must consider IATSE and InSync's competing interpretations of the evergreen clause and decide whether the 2003–2007 CBA expired or was terminated. We therefore affirm the district court's order compelling arbitration.[10]

---

[9] Because this appeal involves the parties' dispute relating to expiration or termination of their CBA, cases involving contract formation and disputes regarding the scope of an arbitration provision are distinct. *See Camping*, 915 F.2d at 1340; *see also Granite Rock*, 561 U.S. at 299 ("[O]ur precedents hold that courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."); *Unite Here Local 217 v. Sage Hospitality Res.*, 642 F.3d 255, 262 n.6 (1st Cir. 2011) (distinguishing disputes involving the arbitrability of contract duration from those involving contract formation, and arbitration clause language of "aris[ing] under [a contract]" from language of "dispute[s] over [a contract's] interpretation or application").

[10] InSync argues that IATSE's claim was untimely under 29 U.S.C. § 160(b). This argument is without merit. IATSE filed its petition within six months of InSync communicating "an unequivocal, express rejection" of IATSE's request for arbitration. *See Local Joint Exec. Bd. of Las Vegas, Bartenders Union Local 165, Culinary Workers' Local Union No.*

## IV.  Conclusion

For the reasons discussed above, we exercise jurisdiction over the district court's order granting IATSE's motion to compel arbitration, and we affirm.

**AFFIRMED.**

---

*226 v. Exber, Inc.*, 994 F.2d 674, 675–76 (9th Cir. 1993); *Teamster Union Local 315 v. Great Western Chemical Co.*, 781 F.2d 764, 769 (9th Cir.1986).  Alternatively, InSync argues in its reply brief that IATSE's grievance was filed outside the time limit specified in the 2003–2007 CBA and, therefore, is contractually time-barred.  Because InSync failed to raise this issue until its reply brief and "[t]he issue has not been fully explored," *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990), InSync has waived the issue and we decline to address it.